JUSTICE NELSON
specially concurs.
¶28 I concur in the Court’s decision as far as it goes. I would also hold, however, that, in addition to Article VIII, Article II, Section 18 and Article VI, Section 10, CI-75 also clearly amends Article IX, Section 2(2), Article XII, Section 1(2) and Article XIII, Section 2, and thus requires a separate vote on these amendments. I disagree with footnote 2 to the Court’s opinion to the extent that it may be read as implying otherwise.
¶29 Article IX, Section 2(2) provides:
The legislature shall provide for a fund, to be known as the resource indemnity trust of the state of Montana, to be funded by such taxes on the extraction of natural resources as the legislature may from time to time impose for that purpose.
This constitutional provision unambiguously requires the legislature to impose taxes on the extraction of natural resources from time to time for the purpose of funding the resource indemnity trust. This constitutional provision also necessarily reposes in the legislature the sole power to determine the nature, frequency and amount of such tax in order to fulfill its constitutional obligation to fund the trust. While CI-75 would apparently not prohibit the legislature from continuing the type and level of taxation for the trust extant at the time CI-75 was adopted, CI-75 clearly would prohibit the legislature from either increasing such tax or changing the nature of the tax (i.e. creat *286 ing a “new tax”) without submitting the increase or new tax to the voters. Such a voting requirement — backed up by CI-75’s supremacy clause —changes the present constitutional scheme by giving the voters veto power over a legislative decision to fund the trust to a greater extent or in a manner different from that presently in existence. The requirements of CI-75 are totally inconsistent with the constitutional obligation of the legislature under Article IX, Section 2(2), to not only impose, but to determine as well the nature, frequency and amount of the tax in order to fund the resource indemnity trust. Article IX, Section 2(2) in its present form, cannot co-exist with the competing obligations imposed upon the legislature by CI-75. Accordingly, CI-75 amends Article IX, Section 2(2) and this amendment should have been voted upon separately when CI-75 was submitted to the voters.
¶30 Similarly, Article XII, Section 1(2) provides:
Special levies may be made on livestock and on agricultural commodities for disease control and indemnification, predator control, and livestock and commodity inspection, protection, research and promotion. Revenue derived shall be used solely for the purposes of the levies.
This constitutional provision empowers the legislature to make certain levies on livestock and agricultural commodities for the various purposes set out. CI-75 amends this constitutional provision on the same rationale discussed above with respect to Article IX, Section 2(2). Pursuant to Article XII, Section 1(2), as Governor Racicot’s brief amicus curiae demonstrates, the legislature has established a number of fees and has given the Department of Livestock authority to set many of them. Again, while the existing fee structure may be continued, no new, different or increased fee may be imposed by the legislature without voter approval. As with Article IX, Section 2(2), CI-75 effectively strips the legislature of its constitutional power under Article XII, Section 1(2) to determine the nature, frequency and amount of levies which it may choose to impose for the purposes set out in this constitutional provision. This amendment of Article XII, Section 1(2) was required to be separately voted upon by the provisions of Article XIV, Section 11.
¶31 Finally, Article XIII, Section 2 is also amended by CI-75. This part of the constitution provides:
Consumer counsel. The legislature shall provide for an office of consumer counsel which shall have the duty of representing consumer interests in hearings before the public service commission *287 or any other successor agency. The legislature shall provide for the funding of the office of consumer counsel by a special tax on the net income or gross revenues of regulated companies.
As with its obligation to fund the resource indemnity trust by tax levies, the legislative obligation to provide for and fund, by way of a special tax, the office of consumer counsel is equally clear. The rationale demonstrating why CI-75 amends Article XIII, Section 2 has already been discussed and will not be reiterated here. Suffice it to say that the amendment to Article XIII, Section 2 imposed by CI-75 was required to be separately voted upon.
¶32 In summary, I agree with the Court’s opinion as far as it goes. I would hold, however, that CI-75 also amended Article IX, Section 2(2), Article XII, Section 1(2) and Article XIII, Section 2, of Montana’s Constitution and that Article XIV, Section 11 required a separate vote on these amendments as well.
JUSTICES TRIEWEILER and HUNT join in the foregoing special concurrence.